UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEITH EDWARD GARDINER,

    Plaintiff,      Case No. 2:21-cv-166

v.              Honorable Maarten Vermaat

CORIZON HEALTH, INC. et al.,

    Defendants.
_____/

## OPINION

    This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case, including entry of a final judgment and all post-judgment motions. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Corizon Health, Inc., Smith, Gasperich, Zelenak, Lancour, and Bauman for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Corizon Health, Inc., Smith, Gasperich, Zelenak, Lancour, and Bauman will be dismissed without prejudice to his ability

to bring those claims in state court. Plaintiff's Eighth Amendment and state law claims against Defendant Bedient will remain in the case.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corizon Health, Inc., Nurses Dennis Smith, Unknown Bedient, Unknown Gasperich, and Unknown Zelenak, Grievance Coordinator Unknown Lancour, and Warden Catherine Bauman.

Plaintiff alleges that in March of 2018, he had a skin infection in the area of his right buttock/hip. Plaintiff states that the area was the size of a nickel and was red, raw, draining, itching, burning, and painful to the touch. Plaintiff used cortisone cream in an attempt to heal the infection, to no avail. On April 6, 2018, Plaintiff requested an evaluation by health care and was seen by Defendant Bedient, who gave Plaintiff topical ointment and bandages. On April 23, 2018, Plaintiff submitted another health care request and was again seen by Defendant Bedient. Plaintiff asked to see the Physician's Assistant (P.A.) and stated that he needed antibiotics because his infection was getting worse. Defendant Bedient gave Plaintiff more of the same ointment and bandages and told him to get out.

Plaintiff's infection continued to worsen and on June 30, 2018, Plaintiff submitted another health care request stating that he needed antibiotics and wanted to be seen by the P.A. On July 2, 2018, Defendant Bedient saw Plaintiff and again gave him the same ointment and bandages, denying Plaintiff a referral to the P.A. Plaintiff states that by this point the infection had spread and he had three spots, each the size of a quarter.

On July 24, 2018, Plaintiff sent another health care request. On July 27, 2018, Plaintiff was seen by a different nurse, who set up an appointment with P.A. Westcomb and gave Plaintiff the same ointment and bandages. In August of 2018, Plaintiff was finally seen by P.A. Westcomb, who asked why the nurses had not referred him sooner. P.A. Westcomb prescribed steroid ointment called betamethasone and oral antibiotics. Plaintiff states that the antibiotics immediately improved his condition. Plaintiff claims that the delay in appropriate treatment resulted in unnecessary pain and suffering in violation of his Eighth Amendment rights.

Plaintiff alleges that in 2019, he developed a skin infection on his arms and attempted to treat it with the leftover betamethasone cream. The infection did not go away, so in June of 2019, Plaintiff made a health care request. Plaintiff was seen by Defendant Bedient, who refused to refer Plaintiff to the P.A. or to give him antibiotics. Instead, Defendant Bedient gave Plaintiff ointment and bandages. Plaintiff's infection did not improve, so Plaintiff submitted a health care request on July 2, 2019. Plaintiff was seen by an unspecified nurse, who refused to refer Plaintiff to the P.A. or give him antibiotics. On August 22, 2029, Defendant Bedient saw Plaintiff again and finally stated that she would refer him to the P.A. However, later that day, she told Plaintiff that she had changed her mind and was not going to refer him, stating that the marks only looked so red because his skin was white. Defendant Bedient then called Plaintiff a criminal and told him to go back to his cell.

In early September of 2019, Plaintiff developed another skin infection on his right rear and mid-thigh, which appeared identical to the first skin infection suffered by Plaintiff on his right hip/buttock. On September 23, 2019, Plaintiff filed a health care request seeking to be seen by the P.A. Defendant Zelenak gave Plaintiff ointment and told him to re-kite in two to three weeks if it did not clear up.

On October 7, 2019, Plaintiff requested antibiotics and an appointment with the P.A. Plaintiff was seen by Defendants Gasperich and another nurse, who measured the wound and took a swab to be sent to the lab. On October 14, 2019, Plaintiff met with Defendant Gasperich and the other nurse, believed to be Nurse Bergh. While examining Plaintiff, Nurse Bergh noted that the wound looked larger. Defendant Gasperich said "Don't say that!" (Compl., ECF No. 1, PageID.15.) Defendant Gasperich then turned to Plaintiff and told him that he did not have a staph infection yet, but that they were taking precautions. He then looked at the computer screen and said, "Whoops – the computer says you have it." (*Id.* at PageID.16.) When Plaintiff asked, Defendant Gasperich said that it looked like the results had come in a couple of days earlier. Defendant Gasperich told Plaintiff that he had MRSA (Methicillin Resistant Staphylococcus Aureus) and that he got it from taking antibiotics. Plaintiff's wound was covered with gauze and sealed with a waterproof bandage, and antibiotics were ordered.

Plaintiff was scheduled for daily callouts for dressing changes. Plaintiff was called out for the first three to four days, but his wound showed no improvement. Then Plaintiff stopped getting called out. Plaintiff asked an officer to call health care on his behalf, but when Plaintiff was taken to health services, Defendant Bedient asked him why he was there. When Plaintiff explained it was for a dressing change, Defendant Bedient told him that he could change his own bandaids. Plaintiff stated that he had been told not to touch his wound because he had MRSA. Defendant Bedient said that she thought he was faking, like everyone else on staff. Plaintiff questioned how he could fake a wound. Defendant Bedient told Nurse Bergh to change Plaintiff's bandaid because she did not want anything to do with him.

As Nurse Bergh was changing Plaintiff's bandaid, he told her that he did not think the antibiotic was working. Nurse Bergh noted that the bandage still had drainage on it, and that

4

the drainage should have resolved by then. Plaintiff asked to see the P.A. and get a different antibiotic, but Defendant Bedient came into the room and said that Plaintiff did not need to see the P.A. or to change antibiotics. Approximately one week later, Plaintiff's infection was worse, so he made a health care request. The next day, a Saturday, Plaintiff was escorted to health care by Officer Maki and was seen by three nurses. One nurse took measurements of the wound and swabbed it. Because the next Monday was Veterans Day, Plaintiff was told that the sample would not be sent out until Tuesday. On Tuesday, November 5, 2019, Plaintiff was called to health care and P.A. Westcomb noted that Plaintiff's wound was worse and stated that he was waiting for lab results to determine what antibiotic could be prescribed.

Plaintiff asked about lab results on November 8, 2019, November 11, 2019, and November 13, 2019, but was told they could not be found. Plaintiff filed a grievance regarding the lab results, and believes that his sample was never sent out. At some point, P.A. Westcomb prescribed Plaintiff a different antibiotic. When Plaintiff asked the nurse who administered the antibiotic how it could be prescribed without the lab results, she stated that she did not know. Plaintiff kited Defendant Bauman and the Health Unit Manager, but never received a response. However, Defendant Smith discussed the kite with Plaintiff and told him that samples get lost all the time, that the P.A. was prescribing the next level of antibiotic, and that his staff should not have commented on the whiteness of Plaintiff's skin or given Plaintiff the misinformation that he had been given regarding the care and origin of his skin infection. Defendant Smith also told Plaintiff that he should have been referred to the P.A. and been given antibiotics much sooner, and that the Defendant Lancour should not have rejected his grievance. Finally, Plaintiff alleges that Defendant Smith told him that his cell-mate had MRSA before he was placed in Plaintiff's cell,

5

and that if he was in Plaintiff's position, he would sue, because Plaintiff had gotten "screwed over" months ago. (*Id.* at PageID.22.)

Plaintiff states that the second round of antibiotics did not clear up his infection and a third type of antibiotic was prescribed. The third antibiotic, which Plaintiff believes was Clindamycin, began to work immediately and eventually healed his skin infection. Plaintiff states that he now has a few small scars that are barely visible.

Plaintiff claims that Defendants' conduct constituted medical malpractice and violated his rights under the Eighth Amendment. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that

the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendant Bauman

Plaintiff fails to make specific factual allegations against Defendant Bauman other than his claim that she failed to personally respond to a kite.[1] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor

---

[1] Plaintiff however concedes that Defendant Smith later discussed the contents of the kite with Plaintiff.

denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Bauman engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against Defendant Bauman.

### B. Defendant Lancour

Plaintiff claims that Defendant Lancour's denial of his grievance prevented him from obtaining administrative relief for the denial of medical care, which violated Plaintiff's Eighth Amendment rights. However, the Court notes that the mere denial of a prisoner's grievance does not state a claim of constitutional dimension. *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003) *citing Martin v. Harvey,* 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir.1999) ("Shehee's only allegations against [these defendants] involve their denial of his administrative grievances[; t]here is no allegation that any of these defendants directly participated . . . in the claimed . . . acts. . . ."). Therefore, Defendant Lancour is properly dismissed.

### C. Defendant Corizon Health, Inc.

Plaintiff claims that Defendant Corizon failed to take appropriate steps to ensure that Plaintiff received proper treatment for his skin infection. A private entity which contracts with the state to perform a traditional state function like providing healthcare to inmates—like Corizon, Inc.—can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey,* 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West v. Atkins*, 487 U.S. 42, 54 (1988)). The

requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell* has been extended to private corporations); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 817–18 (6th Cir. 1996) (same); *Rojas v. Alexander's Dep't Store, Inc.,* 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851-52 (E.D. Mich. 2008) (same).

Consequently, Corizon, like a governmental entity, may be held liable under § 1983 if it actually caused the constitutional deprivation. *See Starcher*, 7 F. App'x at 465 (citing *Monell,* 436 U.S. at 690). Liability in a § 1983 action cannot be based on a theory of *respondeat superior. City of Canton v. Harris,* 489 U.S. 378, 385 (1989). Instead, a municipality—or in this case a private corporation—may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–37 (2010) (citing *Monell*, 436 U.S. at 694).

A custom is a practice "that has not been formally approved by an appropriate decision maker," but is "so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Moreover, the policy or custom "must be the moving force of the constitutional violation." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (internal quotation marks omitted). In this case, Plaintiff fails to allege any specific facts regarding Defendant Corizon. There are no allegations that might support the inference that Corizon's policy or custom caused the constitutional violation of which Plaintiff complains. Therefore, Defendant Corizon is properly dismissed.

### D. Eighth Amendment claims against Defendants Smith, Bedient, Gasperich, and Zelenak

As noted above, Plaintiff claims that Defendants Smith, Bedient, Gasperich, and Zelenak violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be

10

obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

11

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*,

12

150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1. Defendant Smith

Plaintiff alleges that when he kited Defendant Bauman to ask how an antibiotic could be prescribed without lab results, Defendant Smith discussed the kite with him. (Compl., ECF No. 1, PageID.21–22.) Defendant Smith stated that lab samples get lost all the time, that the P.A. was prescribing the next level of antibiotic, and that his staff should not have commented on the whiteness of Plaintiff's skin or given Plaintiff the misinformation that he had been given regarding the care and origin of his skin infection. Defendant Smith also told Plaintiff that he should have been referred to the P.A. and been given antibiotics much sooner, and that Defendant Lancour should not have rejected his grievance. Finally, Plaintiff alleges that Defendant Smith told him that his cellmate had MRSA before he was placed in Plaintiff's cell, and that if he was in Plaintiff's position, he would sue, because Plaintiff had gotten "screwed over" months ago. (*Id.* at PageID.22.)

As noted above, the Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. A review of Plaintiff's complaint shows that Defendant Smith did not have any involvement in Plaintiff's treatment and merely reviewed a kite with Plaintiff. Moreover, there are no facts alleged regarding the interaction between Plaintiff and Defendant Smith that support the inference that Defendant Smith

was deliberately indifferent to Plaintiff's serious medical need. Because Plaintiff fails to allege that Defendant Smith denied him necessary medical care, his Eighth Amendment claim against Defendant Smith is properly dismissed.

### 2. Defendants Zelenak and Gasperich

Plaintiff alleges that Defendant Zelenak examined him on September 23, 2019, after he developed another skin infection on his right rear and mid-thigh, which appeared identical to the first skin infection suffered by Plaintiff on his right hip/buttock. Plaintiff asked for a referral to the P.A. and for an antibiotic, but Defendant Zelenak gave Plaintiff ointment and told him to re-kite in two to three weeks if it did not clear up. Plaintiff re-kited after his infection did not improve, and on October 7, 2019, he was seen by Defendant Gasperich and another nurse, who measured the wound and took a swab to be sent to the lab. On October 14, 2019, Plaintiff was seen by Defendant Gasperich and Nurse Bergh. Defendant Gasperich reprimanded Nurse Bergh for stating that Plaintiff's infection looked worse and initially told Plaintiff that he did not have a staph infection. However, after looking at Plaintiff's computer chart, Defendant Gasperich told Plaintiff that he had a MRSA infection and that he got it from taking antibiotics. Plaintiff's wound was covered with gauze and sealed with a waterproof bandage, and antibiotics were ordered.

As noted above, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim, *Darrah*, 865 F.3d at 372; *Briggs*, 801 F. App'x at 959; *Mitchell*, 553 F. App'x at 605, even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart*, No. 96-5050, 1997 WL 160322, at *2. "Where a prisoner has received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all,'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh*, 643 F.3d at 169 (6th Cir. 2011)), and must demonstrate that the care he received was "so grossly

14

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

In this case, Defendant Zelenak merely advised Plaintiff to wait two to three weeks to see if his newly developed infection did not improve with ointment and bandages, and Defendant Gasperich took a swab of Plaintiff's infection and sent it to the lab. After discovering that Plaintiff had MRSA, Defendant Gasperich ensured that Plaintiff received an antibiotic. Plaintiff's allegations that Defendant Gasperich made inappropriate comments when providing treatment to him do not change the fact that Defendant Gasperich provided treatment for his skin infection. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claims against Defendants Zelenak and Gasperich.

### 3. Defendant Bedient

When Plaintiff initially developed a skin infection, he was seen by Defendant Bedient on April 6, 2018. Defendant Bedient gave Plaintiff topical ointment and bandages. On April 23, 2018, Plaintiff submitted another health care request and was again seen by Defendant Bedient, who denied Plaintiff's request to see the P.A. and to be given antibiotics, and gave him more of the same ointment and bandages and told him to get out. This occurred again on July 2, 2018, despite the fact that the infection had spread and he had three spots, each the size of a quarter. When Plaintiff developed a new infection in 2019, Defendant Bedient again refused to refer Plaintiff to the P.A. or to give him antibiotics and merely gave him the previously ineffective ointment and bandages. On August 22, 2019, Defendant Bedient saw Plaintiff again and finally stated that she would refer him to the P.A., but later that day, she told Plaintiff that she had changed her mind and was not going to refer him, stating that the marks only looked so red because his skin was white. Defendant Bedient then called Plaintiff a criminal and told him to go back to his cell.

Finally, Plaintiff claims that in October of 2019, after Defendant Bedient had been informed that Plaintiff had MRSA and another nurse had noted that Plaintiff's infection was not improving with treatment, Defendant Bedient nonetheless denied Plaintiff's request to see the P.A. or to change antibiotics. Because Plaintiff alleges that Defendant Bedient repeatedly disregarded his need for further treatment in the face of evidence that his condition was worsening, and that she continued to deny Plaintiff care even after she was made aware of his MRSA diagnosis, the Court concludes that Plaintiff has stated an Eighth Amendment claim against Defendant Bedient.

### E. State law claims

Plaintiff claims that Defendants also violated his rights under state law. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertion that Defendants violated state law therefore fails to state a claim under § 1983.

In determining whether to retain supplemental jurisdiction over Plaintiff's state law claims, the Court "should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted). Because Plaintiff continues to a have pending federal claim against Defendant Bedient, the Court will exercise supplemental jurisdiction over his state law claims against Defendant

16

Bedient. But the Court will decline to exercise supplemental jurisdiction over Plaintiff's statelaw claims against the other Defendants. Those claims will be dismissed without prejudice.

### III.   Pending motions

Plaintiff has filed a motion for the appointment of counsel (ECF No. 3). Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel (ECF No. 3) will therefore be denied.

Plaintiff has also filed a motion to serve the complaint (ECF No. 4). Until Prisoner Early Mediation is completed, Plaintiff's motion to serve the complaint is premature. Therefore, Plaintiff's motion to serve the complaint (ECF No. 4) will be denied without prejudice.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's Eighth Amendment claims against Defendants Corizon Health, Inc., Smith, Gasperich, Zelenak, Lancour, and Bauman will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state

law claims against Defendants Corizon Health, Inc., Smith, Gasperich, Zelenak, Lancour, and Bauman will be dismissed without prejudice to his ability to bring those claims in state court. Plaintiff's Eighth Amendment and state law claims against Defendant Bedient remain in the case.

An order consistent with this opinion will be entered.

Dated: February 7, 2022 /s/ *Maarten Vermaat*
Maarten Vermaat
United States Magistrate Judge